# SUPREME JUDICIAL COURT

## JANUARY TERM 1865, AT BOSTON.

PRESENT:

HON. GEORGE T. BIGELOW, CHIEF JUSTICE.
HON. CHARLES A. DEWEY,
HON. THERON METCALF,
HON. EBENEZER R. HOAR, }JUSTICES.
HON. REUBEN A. CHAPMAN,
HON. HORACE GRAY, JR.,

---

## ESSEX COUNTY.

### FREDERICK P. GARDNER *vs.* GEORGE LANE.

An attaching creditor cannot avoid a sale and delivery of personal property simply on the ground that they were made with intent to prefer another creditor, in violation of the provisions of the insolvent law.

If a certain number of barrels of No. 1 mackerel are sold, and by mistake some barrels of No. 3 mackerel and some barrels of salt are delivered, no title to the articles thus delivered passes to the purchaser.

If a writ commanding the officer to replevy a certain number of barrels of mackerel is served, with the assent of the defendant, by taking, in part, two half barrels as equivalent to one barrel, the defendant cannot afterwards claim a return thereof on the ground that the officer seized property not described in his writ.

If under a sale of a number of barrels of mackerel a delivery is made which includes some mackerel packed in half barrels, the title to them will pass to the purchaser, if they are of the same quality described in the agreement.

REPLEVIN. The writ commanded the officer to replevy the goods and chattels following, to wit: " One hundred and thirty

five barrels of No. 1 mackerel, forty-six barrels of No. 3 mackerel, and forty-eight barrels filled with salt, together with the salt contained therein." The officer's return showed that he took upon the writ thirty-two barrels and fifteen half barrels of No. 1 mackerel, forty-nine barrels and two half barrels of No. 3 mackerel, and forty-eight barrels of salt. The answer averred that the defendant had the property in his possession as attaching officer under a writ of attachment against George F. Wonson and others, and that the plaintiff had no title thereto, but the same was owned by Wonson and others.

At the trial in the superior court, before *Ames,* J., it appeared that in November 1862 George F. Wonson & Brothers, being indebted to the plaintiff in the sum of $1338.66, bargained to him in payment one hundred and thirty-five barrels of No. 1 mackerel, at ten dollars a barrel, amounting, with inspector's fees, to $1397.25, and gave him a bill of sale thereof, whereupon he discharged his claims against them and paid them the difference, $58.59; that no delivery was then made, but on the 5th of January 1863 he called upon them for the mackerel, and George F. Wonson went with him to a wharf, where a large quantity was stored, and counted out eighty-five barrels of mackerel, which both supposed to be No. 1, and these were delivered to the plaintiff and left there; that they then went to a store where there were barrels in rows, and Wonson counted off two rows, containing, as he said, fifty barrels, marked the barrel at the end of each row, and gave to the plaintiff a storage receipt in the name of his firm of George F. Wonson & Brothers; and before the same were removed the attachment by the defendant was made. The two rows in the store in fact contained only forty-eight barrels, and the barrels contained salt. A portion of the quantity in the shed was No. 1 mackerel, and a portion was No. 3.

The defendant introduced evidence tending to show that two half barrels would exceed one whole barrel in price by fifty-four cents, for inspector's fees; and the plaintiff introduced evidence tending to show that when the replevin suit was served the defendant agreed that two half barrels should be treated and

considered as equivalent to one whole one, and that the officer serving the replevin acted under such agreement.

The defendant then contended that, if the evidence made out a delivery, (which he denied,) the sale, though not voidable under the statute of Elizabeth in relation to fraudulent conveyances to delay creditors, was nevertheless void as being made for the purpose of giving a preference to the plaintiff, in fraud of the provisions of our insolvent laws; and offered to show that Wonson & Co. were insolvent, and that proceedings against them as insolvent debtors were duly commenced the day after the service of the replevin. But the judge ruled that, as the assignees were not parties to this action, the proposed evidence of proceedings in insolvency was inadmissible.

The defendant then asked the court to rule as follows: " 1. That inasmuch as the eighteen half barrels of mackerel replevied by the defendant were not embraced or named in the bill of sale nor in the storage receipt, nor was there any evidence introduced tending to show that any half barrels were ever sold or attempted to be delivered to the plaintiff, the plaintiff had established no title or right of possession to said half barrels at the time of the service of the replevin.

" 2. That inasmuch as there were replevied by the plaintiff's writ forty-five barrels of No. 3 mackerel and forty-eight barrels of salt, and inasmuch as the bill of sale and the storage receipt were of No. 1 mackerel, and if the jury believe that the attempted delivery was to apply to and consist of No. 1 mackerel only, and by mistake or accident in such delivery there were No. 3 mackerel and salt, the bill of sale, receipt and delivery do not operate to convey to the plaintiff the No. 3 mackerel and the salt, and the defendant is entitled to a return to that extent.

" 3. That, the writ not directing the officer to replevy any half barrels, the officer serving it would not be entitled to take and replevy such half barrels, and the defendant is entitled to a return of them."

The judge adopted the first of the proposed rulings, with certain qualifications as follows, namely, striking out the words " nor was there any evidence introduced tending to show," and

substituting therefor the words, "and if the jury are not satisfied on the evidence introduced;" and adding also these words: "But if there were a delivery of one or more entire piles or rows of barrels, which afterwards proved on examination to contain some half barrels, the plaintiff if he chose could hold them on such delivery, if his title were in other respects made out, even though both parties at the time supposed the barrels so delivered were all of them whole barrels.

The judge did not adopt the second proposed ruling, but instead thereof, instructed the jury that if plaintiff had a bill of sale of one hundred and thirty-five barrels of No. 1 mackerel, and if substantially that number of barrels was in fact delivered to him, the bill of sale would amount to a warranty that the · barrels so delivered contained No. 1 mackerel. If it should prove afterwards on examination that some of the merchandise delivered was of inferior quality and a lower brand, and known as No. 3, and also that a portion of the barrels delivered contained only salt, the plaintiff would have the right to rescind the sale certainly in part, and return the articles which did not answer the description, or, if he saw fit to keep what was so delivered, and to rely upon his warranty for recovering back whatever he had overpaid beyond a fair value, he could do so, and that a third person, not a party to the contract, could not impeach the plaintiff's title under the bill of sale on that ground.

And the judge did not adopt the third proposed ruling, but instead thereof ruled if the jury were satisfied that it was agreed between the plaintiff and the defendant that in the service of the replevin two half barrels should be treated and considered as one whole barrel, and that the term "barrel" should be taken as a measure of quantity and not as describing the mode in which the property was put up, the plaintiff would be justified in replevying the half barrels, provided he satisfied the jury that they were in fact included among the goods which were delivered to him

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*J. G. Abbott & L. Child,* for the defendant. 1. The evidence of the proceedings in insolvency should have been admitted.

The same defence is open to the defendant as would be to the assignees. Any title acquired under such a preference as was here alleged is void *ab initio.* Gen. Sts. *c.* 118, §§ 89, 91 *Mitchell* v. *Black,* 6 Gray, 100. A contract is illegal when the consideration contravenes the special provisions of a statute. *Downs* v. *Lewis,* 11 Cush. 76. Agreements in contravention of the principles of the insolvent or bankrupt laws have been held invalid. *Eastman* v. *Eveleth,* 4 Met. 148, 149. *Case* v. *Gerrish,* 15 Pick. 49. ʼ *Cockshott* v. *Bennett,* 2 T. R. 765. *Pidcock* v. *Bishop,* 3 B. & C. 605. *Rose* v. *Main,* 1 Bing. N. C. 357. *Staines* v. *Wainwright,* 6 Bing. N. C. 174. *Wiggin* v. *Bush,* 12 Johns. 306. *Payne* v. *Eden,* 3 Caines R. 213. 2. The instructions to the jury were erroneous in various respects, and especially in this, that since the parties never agreed upon a sale of No. 3 mackerel or salt, and the delivery of those articles was by mistake, no title to them passed ; certainly not, until after an election by the plaintiff to retain them. In this case the contract was not for specific barrels, supposed to contain mackerel, but for mackerel.

*J. C. Perkins,* for the plaintiff. 1. The evidence was rightly excluded. *Penniman* v. *Cole,* 8 Met. 496. *Burt* v. *Perkins,* 9 Gray, 317, 320. 2. Where there is a contract of sale of one article, and by mistake another article is delivered, and accepted and paid for by the purchaser, the sale cannot be avoided unless both parties can be placed in substantially the position in which they were before the sale. *Conner* v. *Henderson,* 15 Mass. 319. *Williams* v. *Spafford,* 8 Pick. 250. *Gardiner* v. *Gray,* 4 Camp. 144. *Wieler* v. *Schilizzi,* 17 C. B. 619. *Bridge* v. *Wain,* 1 Stark. R. 504. 3. The ruling as to the title to the half barrels was sufficiently favorable to the defendant. 4. The question as to the action of the officer in replevying half barrels under this writ is not open here ; the objection should have been raised before going to trial, and was waived by pleading to the merits. *Bacon* v. *Weston,* 11 Cush. 164. *Jaques* v. *Sanderson,* 8 Cush. 271. *Wolcott* v. *Mead,* 12 Met. 516. *Simonds* v. *Parker* 1 Met. 508. *Chandler* v. *Smith,* 14 Mass. 313. *Wilson* v. *Nichols* 29 Maine, 566. But the description in the writ embraced half

barrels. "Barrel" is a measure of quantity. Besides, the agree‑ment of the defendant estops him from disputing the officer's action in this respect.

BIGELOW, C. J. 1. The evidence offered by the defendant and rejected was clearly incompetent. This is not an action in which an assignee in insolvency is seeking to recover property belonging to the insolvent debtor for the purpose of distribution among all the creditors. It is a controversy between two cred‑itors, each of them striving to hold property of their debtor against the other for the purpose of appropriating it in payment of their preëxisting debts, by way of preference over other creditors. Neither of them can claim any rights in this action under the proceedings in insolvency. The provisions of the insolvent laws for the avoidance of sales, transfers and attachments, which may operate as a preference, are designed exclusively for the benefit of those who come in under the assignee or otherwise to obtain an equal share of the property of the insolvent in the mode pro‑vided by law; and these provisions cannot be invoked in aid of a person who stands only in the position of a creditor, en‑deavoring to secure his whole debt, either by means of a sale or by an attachment. *Penniman* v. *Cole*, 8 Met. 496, 500. *Burt* v. *Perkins*, 9 Gray, 320. The rights of creditors under the in‑solvent proceedings can in no way be affected by the result of the issue between the parties to this suit. If the property in controversy can be rightfully claimed by the assignee in insol‑vency for the benefit of creditors, his title to it can be asserted with like effect, whether the plaintiff or the defendant succeeds in establishing a right of possession and property in this action.

2. Other and more interesting questions were raised at the trial and remain to be considered. The first and most impor‑tant one is, whether on the evidence adduced at the trial any title passed to the plaintiff, under the contract of sale set up by him, to that part of the property replevied which is described in the writ "as forty-six barrels of No 3 mackerel, and forty‑eight barrels filled with salt." The facts in regard to the articles are few and simple. The plaintiff entered into a contract of sale with the original owners of the property, under whom both

parties claim, for one hundred and thirty-five barrels of No. 1 mackerel, at ten dollars per barrel, amounting with inspector's fees to $1397.25, for which payment was made by the plaintiff by releasing claims against the vendors for about thirteen hundred and fifty dollars, and by money to the amount of about fifty-five dollars. This transaction took place on the 26th day of November 1862. No delivery, however, of the mackerel included in the contract of sale then took place, but subsequently five or six weeks afterwards, a delivery was made of certain barrels supposed to contain No. 1 mackerel, in pursuance of the contract; of the barrels so delivered, a large number, did not contain No. 1 mackerel, but instead thereof, forty-five barrels contained No. 3 mackerel, and forty-eight contained salt only, and these were delivered by mistake as a part of the one hundred and thirty-five barrels of No. 1 mackerel which were agreed to be sold to the plaintiff.

On these facts, it seems to us to be inconsistent with elementary principles to hold that any property in the barrels of No. 3 mackerel and of salt passed to the plaintiff. To constitute a valid sale of goods, wares and merchandise, complete and consummate, so as to pass the property to them, there must be an agreement or contract of sale by which the vendor agrees that the articles shall pass to and become the property of the vendee. Without such contract or agreement, there can be no sale. Delivery is not always essential. As between the vendor and vendee of specific chattels *in esse,* the title will pass when the contract of sale is complete without delivery. But the minds of the parties must meet, and there must be a mutual assent to the transfer of certain specified property, before any change of title to it can be effected. Until this takes place that is, until there is an agreement to sell certain specific identical goods, there can be no actual sale or change of ownership. So strictly is this held, that where goods, part of an entire bulk or mass, are agreed to be sold, the contract of sale is deemed to be incomplete and no property passes, if such part has not been separated or designated in such manner that it may be distinguished from the mass or bulk with which it is mingled. Until

the parties are agreed as to the specific, identical goods, the contract can be no more than an agreement to supply goods of a certain kind, or answering a particular description.  The reason of this is obvious.  There can be no transfer of property until the parties have ascertained and agreed upon the articles sold.  Before they are designated and set apart in some form, there is nothing to which the contract of sale can attach, or on which it can operate.  Chit. Con. (10th Amer. ed.) 393–398. *Aldridge* v. *Johnson*, 7 El. & Bl. 885.  *Scudder* v. *Worster*, 11 Cush. 573.  It necessarily follows from these familiar principles, that where parties to a contract of sale agree to sell and purchase a certain kind or description of property not yet ascertained, distinguished or set apart, and subsequently a delivery is made by mistake of articles differing in their nature or quality from those agreed to be sold, no title passes by such delivery.  They are not included within the contract of sale; the vendor has not agreed to sell nor the vendee to purchase them; the subject matter of the contract has been mistaken, and neither party can be held to an execution of the contract to which he has not given his assent.  It is a case where, through mutual misapprehension, the contract of sale is incomplete.  Delivery, of itself, can pass no title; it can be effective and operative only when made as incidental to and in pursuance of a previous contract of sale.  Such a case seems clearly to fall within that class in which, through mistake, a contract which the parties intended to make fails of effect; as where in a negotiation for a sale of property, the seller has reference to one article and the buyer to another, or where the parties supposed the property to be in existence when in fact it had been destroyed.  In such cases the contract is ineffectual, because the parties did not in fact agree as to the subject matter, or because it had no existence.  *Rice* v. *Dwight Manuf. Co.* 2 Cush. 86.  So in the case at bar.  The contract of sale did not pass the property, as against attaching creditors, because there was no delivery to the vendee of that which constituted the subject matter of the contract; the delivery of different articles from those embraced in the contract is inoperative, fo

the reason that there is no agreement for their purchase and sale. And this is the precise distinction which marks the line between the case at bar and those cited by the learned counsel for the plaintiff. In all of the latter, the particular articles which formed the subject of the sale and delivery were mutually agreed upon; there was no mistake or misapprehension concerning them; the same goods which the vendor agreed to sell and the vendee to buy, were delivered. The mistake was only as to the quality of the article; it was the same identical thing in specie as that respecting which the parties had negotiated. Although in such cases there can be no doubt of the right of the vendee to rescind the sale and return the property, by reason of a breach of warranty or fraud, there is as little doubt that the title to the property passes, subject only to such disaffirmance by the vendee. The error at the trial consisted in losing sight of the distinction between cases of this character and the one at bar; between an agreement to sell and deliver a specified article, concerning the quality of which the parties were deceived or mistaken, and an agreement to sell one article and a delivery by mistake of a wholly different article, which did not form the subject matter of the agreement. In the former the title passes at the election of the vendee; in the latter it does not. This view of the principles of law applicable to the facts developed at the trial shows very clearly that the second instruction asked for by the defendant was in substance correct, and should have been given to the jury, as the ruling by which they were to be governed in considering and applying the testimony.

3. It is somewhat difficult to understand the precise posture of the case at the trial, on the point raised in the third prayer for instruction submitted by the defendant. We are by no means sure that the point is open on the pleadings; but assuming it to be so, we do not think it tenable. It is certainly true as an abstract proposition, that an officer in serving a writ of replevin can take only such property as properly comes within the terms of the description contained in the writ. But it is an error to suppose that the term " barrel " necessarily imports a

definite and precise description of a particular article or thing. It may and often is used to designate a certain quantity, and not the vessel or cask in which an article is contained. There is nothing on the face of the writ to show that it was used in the latter sense; on the contrary, the evidence tended very clearly to show, and the jury have found under the instructions of the court, that the term "barrel" was not intended as a precise and definite description of the specific articles which the sheriff was commanded to replevy, but as a designation of the quantity of a particular kind or quality of mackerel which he was to take, irrespective of the mode in which it was packed, or the particular vessels or casks in which it was contained. Nor does the case stop here. It appears that the defendant so understood the description in the writ, and assented that it should be served by taking a sufficient number of half barrels to make up the quantity which the sheriff was required to replevy. After such assent the defendant cannot be permitted to say that the description in the writ was imperfect or insufficient to warrant the service of the writ. The plaintiff having acted on the strength of the assent of the defendant, and incurred the expense of completing the service and prosecuting the suit for the purpose of litigating the title to the property which was actually replevied, it would be unjust and unreasonable to allow the defendant now to defeat the right of the plaintiff to hold a part of the property on the ground of any defect or ambiguity in the description of the property in the writ.

4. The only remaining point of exception arises on the first prayer for instruction. It seems to us the verdict rendered under the instructions given leaves no question open to the defendant on this point of the case. The jury must have found that the half barrels of mackerel were included in the sale and delivery. A mere mistake in the bill of sale, or the description of the mode in which the property was packed, would not prevent the property passing by the delivery, if it was of the same kind and quality as that which the parties intended to include in their agreement.

The result is, that the case must go to a new trial, in conse•quence of misdirection on the point raised in the second prayer for instructions submitted by the defendant.

*Exceptions sustained.*