FREDERICK P. GARDNER *vs.* GEORGE LANE.

No property passes to a vendee, as against attaching creditors of the vendor, where the contract of sale relates to and includes one kind of property, and a delivery is made to the vendee of a wholly different kind, without the knowledge of the vendee or any assent on his part, either express or implied, to take and receive the substituted article in place of the one which he agreed to purchase.

Under Gen. Sts. *c.* 49, §§ 36-39, providing for the preparation, division into different qualities, packing, inspecting and branding of mackerel, each different quality after being thus prepared for market is to be regarded as a different kind of merchandise, within the meaning of the above rule.

REPLEVIN. The writ commanded the officer to replevy the goods and chattels following, to wit: " One hundred and thirty-five barrels of No. 1 mackerel, forty-six barrels of No. 3 mackerel, and forty-eight barrels filled with salt, together with the salt contained therein." The officer's return showed that he took upon the writ thirty-two barrels and fifteen half barrels of No. 1 mackerel, forty-nine barrels and two half barrels of No. 3 mackerel, and forty-eight barrels of salt. The answer averred that the defendant had the property in his possession as attaching officer under a writ of attachment against George F. Wonson and others, and that the plaintiff had no title thereto, but the same was owned by Wonson and others.

At the second trial in the superior court, before *Wilkinson, J.,* after the decision reported in 9 Allen, 492, it appeared that in November 1862 George F. Wonson & Brothers, being indebted to the plaintiff in the sum of $1338.66, bargained to him in pay ment one hundred and thirty-five barrels of No. 1 mackerel at $10.25 a barrel, amounting, with inspector's fees, to $1397.25 and gave him a bill of sale thereof, whereupon he discharged his claims against them. No delivery was then made, but on the 5th of January 1863 he called on them for the mackerel, and George F. Wonson went with him to a shed on the wharf of the firm, and counted out eighty-five barrels of mackerel, being all there were in that shed, and these were delivered to the plaintiff and left there. They then went to a store on the wharf, where there were barrels in rows, and Wonson counted off fifty

barrels, and marked them with red chalk on the end barrel of each row, and said to the plaintiff, "Here are your fifty barrels of No. 1 mackerel; these fifty barrels are large mackerel, and worth more than the others." The plaintiff also marked some of these last named barrels, but did not count them, and relied on what Wonson said in reference to them. After the property had been thus counted out and delivered, Wonson gave to the plaintiff a storage receipt in the name of his firm of George F. Wonson & Brothers, and at the same time the plaintiff paid to Wonson the sum of $58.59, which was the sum due for the property over and above the claims of the plaintiff which he had discharged in November. Before any of the barrels had been removed by the plaintiff, the attachment by the defendant was made; and thereafter on the same day the present action was commenced by the plaintiff.

Forty-eight of the barrels counted off and delivered to the plaintiff in the store proved to contain salt only; and of those in the shed, there were thirty-nine and one half barrels of No. 1 mackerel, and forty-six barrels of No. 3 mackerel, which were all mixed together.

The plaintiff then offered to prove that George F. Wonson, when he delivered these barrels to the plaintiff, knew the character of their contents; that the forty-eight barrels contained salt only, and that the forty-six barrels contained No. 3 mackerel only, and he meant to sell that very identical property to the plaintiff, and that he knowingly and intentionally thus delivered the forty-eight barrels of salt and forty-six barrels of No. 3 mackerel as and for ninety-four barrels of No. 1 mackerel. The plaintiff, at the time of said delivery, supposed that all of the barrels, both those containing No. 3 mackerel and those containing salt, contained No. 1 mackerel, and so supposed until the exact character of their contents was ascertained, upon the officer's undertaking to replevy them on a writ sued out by the plaintiff after the attachment, describing them as so many barrels of No. 1 mackerel, whereupon the writ was changed to its present form and served. The plaintiff also offered to show that No. 1 and No. 3 mackerel, though known commercially by their

brands, and bearing different prices in the market, only differed in quality.

The judge refused to admit the evidence offered, and ruled that the plaintiff could recover only for the thirty-nine and a half barrels of No. 1 mackerel; and, the defendant agreeing that there was such a delivery as to entitle the plaintiff to recover for those, a verdict was directed by the court for the plaintiff for that amount, and a verdict for the defendant for the forty-eight barrels of salt, and the forty-six barrels of No. 3 mackerel. And so far as the verdict for the defendant was concerned, the plaintiff alleged exceptions to the rulings under which it was rendered.

*J. C. Perkins,* for the plaintiff. When a person under the form of a sale deliberately transfers to another, for a valuable consideration, a certain specified body, *corpus* or mass of property, designated and set apart from all other property, with full knowledge of its exact kind, character and condition, and the other in fact accepts and receives that identical body, *corpus* or mass of property as upon a sale or completion of a sale thereof, the title to that property passes to the vendee; the sale is not void, but voidable only at the election of the vendee, and remains good until the vendee avoids it, although the vendee, with the knowledge of the vendor, supposes that the mass or *corpus* is composed of a wholly different kind or class of articles from those which exist in it, and is thereby deceived and defrauded by the vendor; and this, whether the sale is a fulfilment or completion of a previous contract for a sale of such articles as the vendee supposes the mass to be composed of or otherwise. The consent or assent of the vendee, thus in fact obtained, is valid until withdrawn, although obtained by surprise, and becomes conclusively binding unless withdrawn within a reasonable time after the fraud is discovered. *Chandelor* v. *Lopus,* 2 Cro. Jac. 4; *S. C.* 1 Smith's Lead. Cas. (5th Amer. ed.) 246. *Hardman* v. *Bellhouse,* 9 M. & W. 596, 600. *Carson* v. *Baillie,* 19 Penn. State R. 375. *Lord* v *Grow,* 39 Penn. State R. 88. *Borrekins* v. *Bevan,* 3 Rawle, 28. *Campbell* v. *Fleming,* 1 Ad. & El. 40. *Hazard* v. *Irwin,* 18 Pick 95. *Ayers* v. *Hewett,* 19 Maine, 281,

287.  *Stevens* v. *Hyde*, 32 Barb. 171.  *Hoadley* v. *House*, 32 Verm. 179.  *Henshaw* v. *Robins*, 9 Met. 83.  *Seixas* v. *Woods* 2 Caines R. 48.  *Holden* v. *Dakin*, 4 Johns. 421.  *Swett* v. *Colgate*, 20 Johns. 196.

To apply this proposition to the facts of this case : The bill of November 1862 was not a sale, because no articles were set apart and identified to which it could be applied. It was a mere contract for a sale, or a contract to furnish or supply goods of a particular kind or description. The parties met on the 5th of January 1863, and set apart a mass of goods, the precise character of which the vendor knew, and he applied them to that previous contract, as and for the goods therein described, and delivered them, and meant to deliver them and pass the title to them in completion thereof ; the vendee in fact received that identified mass or *corpus* of property, and consented in fact to that application, and to the passing of the title therein to the plaintiff himself, the property being in full view before him, and subject to his inspection as to all marks, brands, and other matters of description appearing upon it, so that he could not afterwards question the identity of that mass of property thus set apart and delivered to him. Under these circumstances we submit that the title to that mass of property passed to the vendee, subject to his right of avoidance ; there was a transmutation of that specific, identified mass of goods, subject only to the right of the vendee under any warranty or fraud in the transaction ; neither the vendor, nor any one claiming through him, could question the vendee's right to hold that mass of property, if he chose to do so.

The vendor was estopped to deny that the title passed to the plaintiff ; and the defendant is bound by the same estoppel.

*L. Child & C. E. Powers*, for the defendant.

BIGELOW, C. J.  The question at issue in the present case is not whether the property in certain chattels has passed, as between vendor and vendee, but whether a purchaser has acquired a valid title thereto as against an attaching creditor of the vendor. It often happens that under a contract of sale a title may pass as between the immediate parties to the contract which

cannot be set up to defeat the rights of third persons. For example, a delivery of property may not be necessary to vest a title in a vendee as against his vendor, but it is always essential to pass the title as against creditors or *bona fide* purchasers without notice. Upon the same principle, no right by way of estoppel can arise in favor of the plaintiff in this action, on the ground that the original owner of the property in controversy has done certain acts, the effect of which is to preclude him from asserting any title to it as against the plaintiff. Such acts might avail the plaintiff, if the issue was between him and his vendor. But the creditors of the latter cannot be affected by them. They have the right to hold the property by attachment to secure their debts, unless it appears that a valid sale and delivery has vested a legal title to it in the plaintiff. Besides; the effect of an estoppel *suo vigore* is not to pass a title to property, but to preclude a party from setting up any right or claim to it. A debtor cannot, by his dealings with a third person to which his creditor is neither party nor privy, shut out the latter from his right to sequestrate his debtor's property by attachment and execution. The only mode in which such right can be defeated is by proof of a valid sale and delivery under and by virtue of which a title to the property has passed to and become vested in the vendee prior to the attachment or seizure by a creditor.

The single test, then, by which to determine which of the two parties to this action has the better title to the property in dispute is, to ascertain whether the plaintiff's evidence shows a valid sale and delivery to him prior to the attachment by the defendant. The solution of this question depends, we think, on the most elementary principles, although in their application to the facts in proof a nice discrimination may be required.

The ordinary definition of a sale, as a transmutation of property from one person to another for a price, does not fully express the essential elements which enter into and make up the contract. A more complete enumeration of these would be, competent parties to enter into a contract, an agreement to sell, and the mutual assent of the parties to the subject matter of the sale and to the price to be paid therefor. A learned author adds

to this summary the brief and significant remark, "If any of these ingredients be wanting, there is no sale." Atkinson on Sales, 5. Story on Sales, § 8. Blackb. on Sales, 110. Thus it cannot be doubted that if under a contract of sale a delivery was made, through mistake, of an article different from that agreed upon by the parties, there would be no sale of the article delivered, and no property in it would pass, for the simple reason that the vendor had not agreed to sell nor the vendee to buy it. There would in fact be "no contract between the parties in respect to the article actually furnished;" or, to express it in different words, when a material mistake occurs in respect to the nature of the subject matter of a sale, there is no mutual assent, and therefore the contract is void. Story on Sales, §§ 148, 458. And so it was held when this case was before us at a previous term. 9 Allen, 492. This principle is well expressed in the maxim of the civil law, "*Cum in corpore dissentitur, apparet nullam esse acceptionem.*"

Applying this principle to the facts proved at the trial, it would seem to be clear that no title passed to the plaintiff in the barrels of salt and No. 3 mackerel, because he made no agreement for the purchase of these articles. His agreement or contract of sale was for articles of an entirely different kind, and at the time of the attachment he did not know that the articles which had been delivered to him were not the same in kind as those which he had agreed to purchase. Nor had he then assented to receive the articles delivered as being in conformity to or in pursuance of his previous contract of sale, unless it can be said that a party assents to that of which he has no knowledge.

But it is very strenuously and ingeniously urged in behalf of the plaintiff that the case at bar, on the facts developed at the last trial, does not come within the principle above stated, and that it is distinguishable from the case as before presented to the court. The ground of this contention may be briefly stated thus. The plaintiff offered to prove that the vendor knew that the property which he delivered to the plaintiff was not the same in kind as he had agreed to sell and the plaintiff to buy, but entirely different, and that he intentionally delivered to the latter

the barrels of salt and of No. 3 mackerel instead of the articles which he had previously agreed to sell to him, and that this fact was entirely unknown to the plaintiff until after the attachment by the defendant. Upon the offer of proof, it is insisted that the case comes within that class in which a vendor has fraudulently misrepresented the quality of the property which is the subject matter of the contract of sale, and thereby deceived and defrauded his vendee; and that although the latter might at his election rescind the contract and avoid the sale, yet the title to the property passes and becomes vested in the vendee, subject only to the right of rescission and avoidance by him.

But this argument seems to us to overlook an essential distinction between cases of that nature and the one at bar. In the former, the minds of the parties meet in regard to the subject matter of the sale. The one agrees to buy, the other to sell, the same identical chattels. The mistake or fraud relates solely to the quality, not to the identity, of the article. But in the latter, there has been no mutual agreement or understanding concerning the specific property which the vendee is to receive under his contract. No particular chattel or mass, purporting to be the same as that bargained for, and seen and known by both parties as that which was the subject of sale between them, has been delivered and received, but an entirely different article, which the vendee has never seen, which he did not agree to buy, and of the nature of which he is wholly ignorant, is passed over to him instead of the property which he agreed to purchase. How can it be said that any property passes under such circumstances? The vendee has not agreed to buy the article. He has not assented to its delivery to him, either under the contract of sale or in substitution of that which he agreed to buy. He does not know what the article is. To uphold such a transaction as a valid sale and delivery would be to say that the title to property can pass to a vendee, which he has never agreed to purchase and to the delivery of which he has not assented; in other words, that a valid sale and delivery exist where the essential elements of the contract are wanting. The fallacy of the argument urged in behalf of the plaintiff consists in the assumption that the

vendee agreed to receive the barrels of salt and of No. 3 mack erel in fulfilment and completion of the previous contract of sale; or, in other words, that he accepted "the identical body *corpus* or mass of property," as the one which he had agreed to buy. But we do not understand that any such acceptance or assent is proved. On the contrary, it is expressly proved that, when the form of delivery was gone through with, the plaintiff believed that the contents of the barrels conformed to the agreement, and was ignorant that articles of a different kind were in fact contained in them. It is not a case, therefore, where through deception and fraud a vendee gives his consent to take a particular article which he sees and identifies as the one which he had agreed to purchase, but concerning the quality of which he is deceived and mistaken; but the very different case of the delivery to a vendee of property which he had neither agreed to buy, nor to receive in fulfilment of a previous contract of sale.

The familiar case of the bezoar stone, which was the subject of the action in *Chandelor* v. *Lopus*, Cro. Jac. 4, will illustrate our meaning. In that case, there can be no doubt that the property in the stone passed to the vendee, subject to a rescission and avoidance of the sale by him on the ground of fraud, because both parties knew and understood the specific subject of the sale. The deceit was not in regard to that, but only as to the quality or value of the stone. The vendor and vendee contracted concerning the same identical thing, and it was delivered by the former and received by the latter. The mistake was not as to the *res*, but as to its incidents. But suppose a different state of facts; that the jeweller had agreed to sell to the plaintiff a bezoar stone of a particular quality, which was not shown to the vendee, and which was not selected or identified as the specific subject of the sale; and that subsequently he should deliver a common crystal inclosed in a box, the contents of which were unknown to the vendee, as and for the stone which he had agreed to purchase. It certainly could not be said that, by such an act of delivery merely, the property in the crysta<sub></sub> passed to and became vested in the vendee. No doubt it woulᴜ so pass if the vendee, on knowing the contents of the box.

accepted it in fulfilment of the contract of sale. But the title would then vest, not by virtue of the delivery, but of the subsequent assent of the vendee. The same illustration, carried a little further, will more clearly develop the point at issue. Suppose the fraud had been practised by the vendee and not by the vendor, and that the former, after agreeing to purchase a bezoar stone contained in a particular box, while the attention of the jeweller was diverted, should remove the stone and transfer to the box a valuable diamond belonging to the jeweller; and that the latter, supposing the box still to contain the bezoar stone, should deliver it to the vendee, who should thereupon depart in possession of the diamond. Could it be contended that the property in the diamond passed? Would not replevin lie in favor of the jeweller on discovery of the fraud? Clearly so. And yet the delivery was of that " identical *corpus* " in pursuance of the previous contract of sale. The jeweller might, it is true, on discovery of the fraud treat it as a sale, and hold the vendee responsible for the full value of the diamond. The latter would be estopped by his own fraud to deny the sale. But if the jeweller did not elect to regard it as a sale, his property in the diamond would not be divested, and he could recover it on due process. There would have been no valid sale and delivery of the article, because the contract of sale did not include it, and no delivery of it was ever knowingly made by the vendor. We cannot distinguish such a case in principle from the one at bar.

But it is said that the vendor delivered to the plaintiff the barrels which contained the salt and the No. 3 mackerel, and that these were received and accepted by the vendee as a completion or fulfilment of the contract of sale. We do not think that this is an accurate statement of the real transaction. It would be so if the barrels had been the subject matter of the sale, and not a mere incident of it. The parties contracted solely for the sale of mackerel of a certain specified well known kind, and not for the barrels in which they were contained. These mackerel, which constituted the real subject matter of the contract, the vendee never saw, nor did he ever knowingly assent or agree

to receive any other article or a different kind of the same article as a substitute therefor. If it had appeared that he agreed to buy certain fish which were in a heap or in open and uncovered boxes, so that the subject matter of the sale was identified and known to both parties, the case might have stood differently. But, on the facts proved at the trial, the plaintiff agreed to buy a certain article; the vendor delivered to him wholly different articles, which he had not agreed to purchase, and there is no evidence that the plaintiff assented to receive or accepted the articles until after the attachment had been duly made by the defendant.

We by no means intend to say that a sale is incomplete and no property passes to a vendee in cases where an agreement for sale is made with reference to certain chattels, which prove to be of an inferior quality, though of the same kind considered as an article of merchandise as that contracted for. As has been already said, in this class of cases the title does pass and vest by delivery in the vendee as against creditors, although he may have the right, on discovery of the misrepresentations or fraud as to their quality, within a reasonable time to disaffirm the contract, rescind the sale and return the property to the vendor. But we do intend to decide that no property passes to a vendee as against creditors where the contract of sale relates to and includes one kind of property, and a delivery is made to the vendee of a wholly different kind, without the knowledge of the vendee or any assent on his part, either express or implied, to take and receive the substituted article in place of the one which he agreed to purchase.

The only doubt which we have had is, whether this rule or principle is applicable to that portion of the property in controversy which is of a different grade from that which formed the real subject matter of the contract between the parties; that is, whether the delivery of the barrels of No. 3 mackerel ought to be regarded as a delivery of the same article as that contracted for, but of an inferior quality. But on careful consideration of this part of the case, the majority of the court are of opinion that, under the provisions of Gen. Sts. c. 49, §§ 33–56, each

grade of mackerel may be properly regarded as a distinct kind of merchandise, and, when made the subject of a contract of sale, that each grade stands on the same footing in relation to the other grades as if it was an article of an entirely different species. For this reason no distinction can be made between the barrels containing the No. 3 mackerel and those containing salt. No title to either had vested in the plaintiff prior to the attachment, because neither of them were included in the contract of sale, and the plaintiff had not assented to receive them in fulfilment of the contract.        *Exceptions overruled*