JOHN ROBSON *vs.* CONRAD BOHN.

November 20, 1880.

**Contract for Sale of Lumber, to be delivered in Instalments—Dependent Cove-nants.**—A contract for the sale of 425,000 feet of lumber of various kinds and qualities, certain specified kinds to be delivered on board cars, and other kinds on the vendee's land, provided that the whole should be delivered on or before September 1st; that the vendor should, immediately on the execution of the contract, commence delivery, and continue delivering, at the rate of 20,000 feet per week, till the whole should be delivered; that the vendee should pay $3,000 in his note on the execution of the contract, $2,000 on the first of August, and the remainder of the price when the whole should be delivered; the price to be at the rate of $15.50 per thousand feet. *Held*, that the covenant to continue delivering after August 1st was dependent on that to pay the $2,000; and that if the vendor delivered at the agreed rate till that day, and the vendee, without excuse, refused to pay the $2,000, the former might treat the contract as abandoned, and recover the market value of the lumber delivered.

**Same—Request to suspend Delivery.**—A request by the vendee upon the vendor not to ship any more lumber (on the cars) till further notice, justified the latter in suspending all delivery while the request remained in force.

**Same—Delivery of Inferior Lumber in Addition to Lumber due.**—If, on August 1st, the vendor had delivered at the agreed rate of the kinds and qualities required by the contract, it was no excuse to the vendee, to refuse payment of the $2,000, that the vendor had, in addition, delivered some which was not of the quality required by the contract, and which was rejected by the vendee.

This action was originally brought in the district court for Winona county, to recover, at the contract price, for lumber delivered by the plaintiff to the defendant, under the contract hereinafter set forth. After the decision of this court on a former appeal, (*Robson* v. *Bohn*, 22 Minn. 410,) that plaintiff could not maintain his action on the contract, and after the cause had been remanded to the district court, the plaintiff, by leave of court, amended his complaint, alleging that on May 19, 1873, the plaintiff entered into a written contract with defendant whereby he agreed to sell and deliver to defendant 425,000 feet of lumber, consisting of 60,000 feet of com-

mon boards, 85,000 feet of clear or finishing lumber, 182,871 feet of dimension lumber, and 32,129 feet of other lumber, the kind not specified except that it was not to include finishing lumber or flooring; all the lumber to be of as good quality as was then usually sold in the city of Winona of the grades mentioned; the flooring and finishing lumber to be delivered near plaintiff's lumber-yard at Winona, and all the balance to be delivered free on board cars at Winona, and all to be delivered on or before September 1, 1873, the delivering to begin at once and to continue, at the rate of not less than 20,000 feet per week, until the whole should be delivered; in consideration whereof the defendant agreed to pay plaintiff for such lumber at the rate of $15.50 per thousand feet, and to give in part-payment his promissory note for $3,000, payable July 10, 1873, to pay $2,000 more in cash on August 1, 1873, and pay the balance on the full delivery of the lumber. That plaintiff at once began performing the contract, and on May 20, 1873, delivered to defendant, at his special request, at plaintiff's lumber-yard at Winona, 2,000 feet of clear or finishing lumber, and in like manner, on the day following, 1,000 feet more of the same kind; and on May 22d delivered to defendant, free on board cars at Winona, 6,000 feet of roofing, and 6,000 feet of dimension lumber, all of which was duly received and retained by defendant; that plaintiff was prepared and intended to continue the delivery of lumber on the contract right along, according to its terms, but that the defendant then notified plaintiff that he was not prepared to receive the lumber, and requested plaintiff to suspend any further delivery of lumber until further notified by the defendant, and also requested that the common boards and balance of the roofing be not delivered on board the cars unless further specially so directed, but that he would send his teams for and receive the same at plaintiff's yard as he might want it, which said requests of defendant as to a change in the place and mode of delivery, and a present suspension of the delivery of lumber, were acceded to and complied with by plaintiff;

and that, in compliance with the request of defendant, the further delivery of lumber upon the contract was suspended until June 7, 1873, at which time the plaintiff resumed the delivery of the lumber, and thereafter continued to deliver the same, as required by the contract as modified at defendant's request as to the mode and place of delivery, until August, 1873.

That he delivered to defendant upon the contract (at dates and in quantities and of values specified) between May 22d and August 1, 1873, 202,207 feet of lumber of the market value of $3,630.29, and in all respects performed the contract on his part as required by its terms as modified as aforesaid, until the defendant made default in his payments on the contract. That defendant made the $3,000 payment mentioned in the contract, but neglected and refused to make the $2,000 payment on August 1, 1873, when it became due, and has ever since neglected and refused to pay the same or any part thereof, and has made no other than the $3,000 payment on the contract. That after defendant's neglect and refusal to make the $2,000 payment when due or thereafter, and because of such neglect and refusal, the plaintiff stopped and refused further delivery upon the contract, but was prepared, ready and willing to go on and fully perform the contract on his part if the defendant would make payment as agreed. That there is a balance of $630.29, for which sum, (as well as for the value of certain lumber not included in the contract, but sold by plaintiff to defendant and forming the basis of two other causes of action not here material,) with interest from August 1, 1873, judgment is demanded.

The defendant in his answer set forth the written contract stated in the complaint, (without the schedule annexed to it,) in words following:

"This agreement made this 19th day of May, 1873, by and between John Robson of the city of Winona, * * party of the first part and Conrad Bohn, of the same place, party of the second part, witnesseth:

"The said party of the first party covenants and agrees to and with said party of the second part to sell and deliver to said party of the second part 425,000 feet of lumber—392,-871 feet as per schedule annexed, and the remainder of said lumber to include neither finishing lumber nor flooring; all of said flooring and finishing lumber to be stacked up on the land belonging to said Bohn, a short distance east of said Robson's lumber-yard; the balance of said lumber to be delivered free on board of cars at Winona.   All of said lumber to be delivered on or before the 1st of September, 1873; said delivering to commence immediately, and continue at the rate of not less than 20,000 feet per week till the whole is delivered.   And said party of the first part convenants that said lumber shall be good, sound, merchantable lumber, of as good quality as is usually sold in the city of Winona of the various grades mentioned in the schedule hereto attached and made part of this contract.

"And the said party of the second part covenants and agrees to deliver to said party of the first part, on the delivery of this agreement, his promissory note for $3,000, payable July 10, 1873, and the further sum of $2,000, August 1, 1873; and, on the full delivery of the said 425,000 feet of lumber, as aforesaid, to pay therefor the sum of $15.50 for each and every thousand feet of lumber aforesaid so delivered, less the amount of $5,000 above mentioned.

"And for the true and faithful performance of each and every one of the covenants and agreements above mentioned, the parties to these presents bind themselves each unto the other.   In witness," etc.   [Signed and sealed by both parties.]

The answer further alleges that the lumber contracted for was to be used by defendant in constructing a public building at St. Peter (the Hospital for the Insane) which defendant was under contract to erect and complete within a certain time under a heavy forfeit, as plaintiff when the contract was made well knew; denies any modification, suspension or abandonment of the written contract; alleges that on August

1, 1873, plaintiff had not furnished, by many thousand feet, the quantity of lumber then due upon the contract, and has ever since refused to make up such deficiency, and that the quality of much of the lumber furnished was inferior to that required by the contract—especially that 6,000 feet of lumber, loaded on car and shipped by plaintiff to St. Peter without defendant's knowledge, as roofing, was not such roofing as the contract required, but was rotten lumber known as "culls;" that defendant refused to receive it, and notified plaintiff to take it away and furnish good lumber in its place, which the plaintiff refused to do; and that the same is part of the lumber claimed in the complaint to have been delivered under the contract. That on August 1st, at which time many thousand feet of lumber were past due and not delivered, the defendant requested of plaintiff the delivery of lumber under the contract, but plaintiff refused to do so; and that plaintiff, being thus in default, did on August 4th demand the $2,000, payable by the terms of the contract on August 1st, which the defendant was willing and ready and then offered to pay if plaintiff would perform the contract on his part; but the plaintiff wholly refused to do so, for which reason solely the defendant refused to make the $2,000 payment.

The place of trial having been changed to Goodhue county, the action was tried in that county by *Crosby*, J., without a jury. At the trial there was a conflict of evidence as to whether defendant requested plaintiff to suspend all deliveries between May 22d and June 7th, or merely deliveries on cars. In regard to defendant's refusal to make the $2,000 payment, it appeared that he put his refusal on the ground mainly of deficiency in quality of the lumber delivered up to that time, and would not make the payment without an assurance from plaintiff that he would deliver better lumber in the future. The plaintiff testified that his reply was "that we had a contract already, and that it was not necessary to vary it; that we had no other qualities to deliver; that the

22

qualities would be the same that we had delivered, and that was our understanding."

Upon the matters in issue, the court found that the lumber mentioned in the complaint was delivered by plaintiff to defendant between May 20, 1873, and August 1, 1873, at the rate of fully 20,000 feet per week, except that between May 22d, and June 7th, all delivery was suspended, in consequence of a request made by defendant to plaintiff on May 21st to suspend all shipments until further notified by plaintiff; that all the lumber delivered was of the quality required by the contract, except the 6,000 feet of roofing mentioned in the answer, which was of inferior quality and was rejected by defendant, leaving the whole amount delivered and accepted 196,207 feet, the market value of which was also found. As conclusions of law the court held that defendant's request to suspend shipments excused the plaintiff from delivering any lumber between May 22d and June 7th; that the plaintiff at the time of the suspension had fully performed the contract on his part; that between June 7th and August 1st the plaintiff delivered to the defendant fully 20,000 feet of lumber per week, and on August 1st had fully performed the contract on his part, except as relieved therefrom at the request of defendant; that the covenants in the contract are dependent, and that defendant's refusal to make the $2,000 payment on August 1st was a breach of the contract and relieved the plaintiff from any further obligation to perform on his part; that the plaintiff cannot recover for the 6,000 feet of roofing rejected by defendant, but is entitled to recover what the remainder of the lumber delivered under the contract was reasonably worth. The defendant moved for a new trial, which was refused, and he appealed to this court.

*Robert Taylor*, for appellant.

1. The request not to ship any more lumber until further notice was confined to that part of the lumber to be delivered on the cars, and did not extend to that part of the lumber (which included the 125,000 feet of flooring and finishing)

which was to be stacked on defendant's land near plaintiff's yard, and was not to be shipped at all. A mutual agreement to suspend shipments on cars for a time cannot be construed so as to suspend or excuse all deliveries under the contract. Upon such a construction, though only a few thousand feet were required to be delivered on cars for shipment, and all the rest was to be delivered on defendant's lot, yet a mutual agreement to delay shipment of the few thousand feet for any period—say till after August 1st—would allow plaintiff to neglect to deliver a foot of lumber of any kind, and yet require payment of the $3,000 on July 10th, and of the $2,000 on August 1st, under the contract. It is evident that such was not the intention of the parties, and that neither of them had any thought of a waiver of that provision of the contract requiring deliveries to begin at once, and continue at the rate of not less than 20,000 feet per week till the whole should be delivered. Nor did the request to suspend car deliveries amount to such waiver. This consideration is important, because if it was such a waiver, and excused plaintiff from delivering any lumber during the fifteen days from May 22d to June 7th, then for the remainder of the time to August 1st, there were delivered 20,000 feet per week; but if not such a waiver and excuse, then plaintiff was in default as to the quantity delivered, (to say nothing of the quality,) for by August 1st there should have been delivered 211,000 feet, while the court finds that there was delivered only 196,207 feet, and plaintiff only claims to have delivered 202,207 feet.

Plaintiff being in default on August 1st as to the quantity of lumber delivered, this, with his refusal to deliver more, was a breach of the contract, which justified defendant (if the covenants are dependent) in refusing payment of the $2,000, except on fulfilment by plaintiff. *Robson* v. *Bohn*, 22 Minn. 410; *Dey* v. *Dox*, 9 Wend. 129; 2 Chitty Cont. 1083; 2 Parsons Cont. 525, *et seq.*, 528, 529. If the covenants are dependent, they are so in the order of their required performance, and plaintiff's default and refusal were the first breach.

Plaintiff had also violated the contract in respect to the quality of the lumber delivered. The 6,000 feet of roofing, sent by car to St. Peter on May 22d, was certainly not as good as the contract required. Here was a conceded breach of the contract. But the plaintiff, when defendant refused to accept this roofing, replied that he had no other qualities to deliver, and that the qualities would be the same as he had delivered. The contract called for 25,000 feet of roofing, of which only 3,000 feet were delivered besides the rejected 6,000 feet. Yet plaintiff insisted that defendant must accept that inferior roofing under the contract, and declared that he had no other qualities to deliver and that the qualities would be the same in future; and in this action plaintiff seeks to recover for this rejected roofing as fully as for any portion of the lumber delivered.

Not only was this a breach of the contract, which was never waived by defendant, but this declaration and refusal to deliver any better quality was itself a new and continued breach, and defendant had a right so to consider it. *Hochster* v. *De La Tour*, 2 El. & Bl. 678; *Danube & Black Sea Ry. Co.* v. *Xenos*, 13 C. B. (N. S.) 825; *Crist* v. *Armour*, 34 Barb. 378; *Skinner* v. *Tinker*, 34 Barb. 333; *Burtis* v. *Thompson*, 42 N. Y. 246; *Greenup* v. *Stoker*, 3 Gilm. (Ill.) 202, 213; *Thompson* v. *Laing*, 8 Bosw. 482; *Frost* v. *Knight*, Law Rep. 7 Exch. 111.

2. The covenants in the contract are not dependent. There are no words of dependence, nor words indicating that performance of any act by either party should be contingent upon performance of any other act, except only as to the payment of the final balance after all the lumber should be delivered. The stipulations show that it was neither intended that the lumber should be paid for in advance, nor as delivered, nor that deliveries should be kept in advance of payment. Payments of fixed sums were to be made on fixed dates, irrespective of the amounts delivered, and deliveries were to begin and continue at a given rate, without reference

to payments; and to the faithful performance of each and every covenant the parties bind themselves, each to the other, etc. All this shows that each relied upon the responsibility of the other, and on his remedies for a breach, if any should occur, and not upon any dependence of the covenants. Such being the evident intention of the contracting parties, the court should hold the covenants to be independent. 2 Parsons Cont. 528, *et seq.*; 2 Smith Lead. Cas. 24 and cases cited; *Milldam Foundery* v. *Hovey*, 21 Pick. 417; *Knight* v. *New England Worsted Co.*, 2 Cush. 271, 286.

Another reason for holding these covenants independent is that the damages resulting from a breach would be materially different; and the covenants go to part only of the consideration, and may be separately enforced, or the breach compensated for in damages. *Tomkins* v. *Elliot*, 5 Wend. 496; 2 Smith Lead. Cas. 25, 26, and cases cited; *Goldsborough* v. *Orr*, 8 Wheat. 217; *Freeth* v. *Burr*, Law Rep. 9 C. P. 208; *Tipton* v. *Feitner*, 20 N. Y. 423; *Keenan* v. *Brown*, 21 Vt. 86; *Franklin* v. *Miller*, 4 Ad. & El. 599; 6 Cent. Law Journal, 322.

There is a clear distinction in this respect between the case at bar and those cases where goods are to be paid for as delivered, or work is to be paid for as it progresses—such as *Withers* v. *Reynolds*, 2 B. & Ad. 882; *Evans* v. *Chicago & Rock Island R. Co.*, 26 Ill. 189; *Canal Company* v. *Gordon*, 6 Wall. 561; *Hale* v. *Trout*, 35 Cal. 229, 242; *Hoagland* v. *Moore*, 2 Blackf. 167; *Jewell* v. *Blandford*, 7 Dana, 472. See *Franklin* v. *Miller*, 4 Ad. & El. 599, and the other cases before cited, for the distinction.

3. There was no such abandonment or breach of the contract by defendant as to entitle plaintiff to rescind and recover the retail market price of the lumber delivered. Defendant was ready and willing to perform, and offered to do so if plaintiff would perform on his part, and he insisted on such performance by plaintiff. Only part of the lumber having been delivered and accepted, the plaintiff is entitled to re-

cover therefor the contract price only; and if, as we claim, he was guilty of a breach in refusing to deliver the balance of the lumber of a proper quality, the defendant should be allowed to recoup his damages for such breach. Sedgwick on Damages, 215, *et seq.*; 2 Smith Lead. Cas. 56, 60; *Evans* v. *Chicago & Rock Island R. Co.*, 26 Ill. 189; *Phillips & Colby Construction Co.* v. *Seymour*, 91 U. S. 646; *Britton* v. *Turner*, 6 N. H. 481, 495; *Tipton* v. *Feitner*, 20 N. Y. 423.

*Gilman & Clough*, for respondent.

It was not plaintiff's fault that the 20,000 feet were not delivered weekly during the two weeks of suspension; but whether the plaintiff delivered the required weekly quantity or not is wholly unimportant, for, even if he was in default, he is entitled to recover on a *quantum valebat* for the amount delivered. This court, in 22 Minn. 410, has already so ruled. The plaintiff has now sued and recovered on the *quantum valebat*—the only basis on which he could recover, if himself in default; but if not in default, he might elect to claim on the *quantum valebat* or on the contract. 2 Smith Lead. Cas. 40, *et seq.*; *Upstone* v. *Weir*, 9 Reporter, 677. The same would have been the case also, if plaintiff had been in default as to the quality of the lumber delivered. Except as to the roofing, the court finds that the plaintiff, on each delivery, rendered to defendant a written bill showing the quantity, kind and character of the lumber delivered. The defendant received, retained and used the lumber, and cannot be heard to object to its character or quality after having thus accepted it as answering the requirements of the contract. If he intended to object to any of it as not answering the contract, he should have returned or offered to return it. *McCormick* v. *Sarson*, 45 N. Y. 265; *Reed* v. *Randall*, 29 N. Y. 358, 364; *Beck* v. *Sheldon*, 48 N. Y. 365; *Gaylord Manufacturing Co.* v. *Allen*, 53 N. Y. 515; *Dutchess Company* v. *Harding*, 49 N. Y. 321.

2. Defendant's refusal to pay the $2,000 on August 1st justified plaintiff in refusing to deliver more lumber. *Dwinell*

v. *Howard*, 30 Me. 258; *Reybold* v. *Voorhees*, 30 Pa. St. 116; *Hartje* v. *Collins*, 46 Pa. St. 268; *Phillips & Colby Construction Co.* v. *Seymour*, 91 U. S. 646; *Evans* v. *Chicago & Rock Island R. Co.*, 26 Ill. 189. Defendant's refusal—whether with or without excuse—was an abandonment of the contract, and this court so held in this case in 22 Minn. 410. If defendant wished to preserve his right to future deliveries under the contract and to damages in case of its non-delivery, he should have paid the $2,000. Failing in that, he waived and lost his right to the balance of the lumber, and, as a consequence, his right to any damages for its non-delivery. If both parties were in default, it was a rescission of the contract. Such was the former ruling of this court, and so. it is held in *Harris* v. *Bradley*, 9 Ind. 166.

Defendant did not put his refusal to pay the $2,000 on the ground that the required quantity had not been delivered, but on the ground that the lumber delivered was not satisfactory, and that plaintiff would not give assurances as to the future delivery of the lumber. But defendant had no right to demand any other assurance from plaintiff than that furnished by the contract itself. His remedy was by refusal to receive lumber not in accordance with the contract, and by action for damages.

3. Upon the question of the covenants in the agreement being dependent or independent, and in addition to cases before cited, we call particular attention to *Cunningham* v. *Morell*, 10 John. 203; *Grant* v. *Johnson*, 5 N. Y. 247; *Bean* v. *Atwater*, 4 Conn. 3; *Kane* v. *Hood*, 13 Pick. 281; *Leonard* v. *Bates*, 1 Blackf. 172.

GILFILLAN, C. J. Action to recover the value of lumber delivered to defendant. On May 19, 1873, the parties entered into a written contract, by which plaintiff agreed to sell and deliver to defendant 425,000 feet of lumber of various descriptions, as set forth in a schedule attached to the contract; certain of the lumber to be stacked by plaintiff on land of defendant in Winona, the remainder to be delivered free on

board cars at Winona; all to be delivered by September 1, 1873; the delivering to commence at once, and continue, at the rate of not less than 20,000 feet per week, till the whole was delivered, and all to be good, sound, merchantable lumber, of as good quality as is usually sold in the city of Winona. The defendant agreed to deliver to plaintiff, on the execution of the agreement, his note for $3,000, payable July 10, 1873, and the further sum of $2,000 August 1, 1873; and on the full delivery of the lumber, to pay therefor at the rate of $15.50 per thousand feet, less the said $5,000.

One question made in the case is, was plaintiff's covenant to deliver lumber after August 1st dependent upon defendant's covenant to make the payment of $2,000 on that day, so that if defendant, the plaintiff not being in default, refused to make that payment, the plaintiff could refuse to deliver any more lumber, and, if defendant's refusal were persisted in, treat the contract as abandoned? Although the contract does not in terms express that any one of the covenants shall be dependent on another, there can hardly be a question that they were intended to be so in the order in which they are to be performed. That is, that plaintiff's obligation to deliver any lumber at all depended on defendant performing his covenant to deliver the note for $3,000; defendant's covenant to pay $2,000 August 1st, on plaintiff's performance up to that time of his covenant to deliver at the rate of 20,000 feet per week; plaintiff's obligation to continue delivering after that time, upon the payment of the $2,000; and defendant's obligation to make the final payment, upon plaintiff's complete performance of the contract on his part. It cannot reasonably be supposed that the parties intended that either party should be bound to perform on his part, though the other should refuse to do what he was required to do. No one could doubt that, in a contract for the sale of property, in which the time for paying the consideration is a date prior to that for the transfer of the property, the payment of the consideration is intended to be a condition precedent to

the obligation to transfer. This does not differ materially from such a case.

On or before August 1st, plaintiff delivered only 196,000 feet of lumber, of qualities such as the contract called for; some thousands of feet less than the written contract required to be delivered on or before that day. To excuse this non-compliance with the contract on his part, plaintiff showed that, on the 22d of May, defendant requested him not to ship (that is, deliver on the cars) any more lumber until further notified by defendant, and that, pursuant to that request, he suspended delivery of lumber until June 7th, when he resumed delivery. From that time he continued to deliver at the rate of more than 20,000 feet per week. Plaintiff claims, and the court below decided, that this request relieved plaintiff from the obligation to deliver lumber during the time the request was in force, while defendant claims that that obligation continued, and plaintiff ought to have fulfilled it by delivering during that time, on defendant's land in Winona, 20,000 feet per week of the lumber to be there delivered. The court below was correct in deciding that the defendant's request, while in force, justified plaintiff in suspending delivery of lumber. Had the contract required the delivery, during that time, of any of the lumber which was to be delivered on defendant's land, the request to suspend shipping the other lumber would not have affected that requirement of the contract. But the contract did not so require. Plaintiff was, under its terms, at liberty to make up the 20,000 feet per week with the lumber to be delivered on the cars. He was under no obligation to deliver during that time any of the other lumber. The request could not have been intended nor understood by the parties to create such an obligation.

The excuse made by defendant at the time for not paying the $2,000 was not that plaintiff had failed to deliver at the rate of 20,000 feet per week from the date of the contract, but that 6,000 feet of that delivered was not of the quality

called for by the contract. The court below found it was not of such quality, and disallowed plaintiff's claim to recover for it. But the fact did not affect defendant's obligation to pay the $2,000. Aside from the 6,000 feet, the plaintiff had delivered more than the contract, as modified by defendant's request, required, before August 1st. The $2,000 was not to be in payment of the lumber delivered before August 1st, nor of any particular lumber, but was to be a partial payment for the whole amount to be delivered under the contract, to wit, the 425,000 feet. The 6,000 feet not being according to contract, and defendant having refused to receive it, he could not be required to include it in the 425,000 feet on the final settlement. That 6,000 feet was as though it had never been delivered; and plaintiff, having—treating the 6,000 feet as never having been delivered—performed the contract as modified up to the date when the $2,000 was to be paid, was entitled to receive it. The defendant, therefore, having without excuse refused to perform the contract on his part, the plaintiff had a right to treat it as at an end, as he has done, and to recover upon defendant's implied contract to pay the value of the lumber delivered to and accepted by him.