## WILLIAM HJORTH AND OTHERS, CO-PARTNERS UNDER THE NAME AND STYLE OF WM. HJORTH AND COMPANY v. ALBERT LEA MACHINERY COMPANY.[1]

May 16, 1919.

No. 21,158.

**Sale — failure to deliver at time fixed — demand of buyer not necessary.**

1. In sales of personal property, where the time for delivery is fixed, failure to deliver within such time is a breach of contract. If no time is fixed, failure to deliver within a reasonable time, taking into account the character of the goods, the purpose for which intended, the ability to produce them and the usual course of trade, is a breach. No demand by the buyer is necessary in ordinary cases to put the seller in default.

**Same — finding supported by evidence.**

2. The evidence sustains a finding that a seller in certain contracts of sale evidenced by several accepted orders, did not make deliveries within the times fixed or contemplated by the contracts.

**Same — effect of request not to ship until further notice.**

3. Where shipments are to be made from time to time, a request on the part of the buyer not to ship certain goods until further notice justifies the seller in suspending delivery while the request remains in force, but the seller is relieved if such request is occasioned by some default of his own, and the buyer is at all times willing to receive all goods ordered if shipped in accordance with the contract.

**Same — effect of default on part of buyer — on part of seller.**

4. The buyer's failure, without excuse, to make an instalment payment when due, relieves the seller from making further instalment deliveries, but where the seller has first defaulted and continues to be in

[1] Reported in 172 N. W. 488.

default and has caused substantial damage to the buyer, and the buyer withholds payment of an instalment on that account, and offers to pay for subsequent shipments on delivery, and is solvent, the seller is not justified in suspending further deliveries.

**Sale — buyer's claim for damages.**

5. The buyer is not obliged to threaten damages for nondelivery as a condition to his right to assert such claim.

**Damages not excessive.**

6. The damages given in this case are not excessive.

**Sale — implied warranty of freedom from latent defects.**

7. A manufacturer of goods impliedly warrants that his product is free from latent defects in the process of manufacture.

**Opinion evidence admissible.**

8. Certain opinion testimony as to value was properly received.

Action in the district court for Freeborn county to recover a balance of $966.51 for goods sold and delivered. The facts are stated at the beginning of the opinion. The case was tried before Catherwood, J., who made findings and ordered judgment in favor of defendant. From an order denying their motion for a new trial, plaintiffs appealed. Affirmed.

*John O. Peterson* and *Henry A. Morgan,* for appellants.
*John F. D. Meighen* and *Bennett O. Knudson,* for respondent.

HALLAM, J.
Plaintiff sued to recover $966.51, the price of merchandise sold and delivered. Defendant admitted the sale and the price but set up two counterclaims, one for damages for failure to deliver other merchandise which plaintiff contracted to sell, and the other for breach of warranty of quality of some of the merchandise delivered.

As to the first counterclaim: Plaintiff is a manufacturer of tools at Jamestown, New York, and defendant is a jobber of tools at Albert Lea, Minnesota. From time to time during the year 1916 defendant ordered from plaintiff wrenches and pliers. Plaintiff accepted these orders. The contract relation was therefore complete. A large quantity of the articles so sold, plaintiff failed to deliver. The court found that the failure

was without excuse. The court limited defendant's damages to the difference between the contract price and the market price of similar goods at the time delivery was due and found that defendant suffered damage in the sum of $907.48. This rule of damages eliminated all items of special damage and was the most favorable rule possible to plaintiff, if defendant is entitled to damages at all.

1. Plaintiff claims that it committed no breach of contract. It claims that, in order to put plaintiff in default as to deliveries, it was necessary for defendant to make specific demand for delivery at a certain time. We do not agree with this contention. Some of the orders fixed a date for delivery. Some asked shipment "at the earliest possible date," or "as soon as possible," or "in shipments a week apart," commencing "as soon as possible," or "as soon as possible after you have filled the orders * * * now * * * on file." Most of them fixed time of delivery in one of the ways above mentioned. No demand is necessary in any of these cases to put the seller in default. Where the time for delivery is fixed the failure of vendor to deliver within such time is a violation of the contract. Where no time for delivery is fixed the seller is obliged to make delivery within such time as is reasonable, taking into account the character of the goods, the purpose for which intended, the ability of a manufacturer to produce the goods, and the usual course of business or trade. Palmer v. Breen, 34 Minn. 39, 24 N. W. 322; 35 Cyc. 183.

Canney v. Brown, 40 Minn. 461, 42 N. W. 354, is not in point. The transaction involved in that case was a sale of paving plank to be delivered during the season of 1887. The contract contemplated deliveries at places where paving was to be done and at times and in quantities as the work of construction required. Of necessity some further demand was necessary in such a case in order to render performance by the seller possible.

2. Plaintiff claims that it delivered the articles for which no time was fixed, as fast as it reasonably could, taking into account war conditions; in other words, within a reasonable time. The court found against plaintiff on this point and the evidence is sufficient to sustain this finding. There is evidence that plaintiffs preferred not to pay the prevailing high prices for some of the raw material necessary to manufacture the tools sold to defendant, and preferred also to sell its manufactured products

to others from whom it could derive larger profits than by filling its contracts with defendant.

3. Plaintiff claims that at numerous times defendant made requests not to ship certain articles until further notice, and that this fact accounted for the failure to ship a large part of the articles, for the nondelivery of which damages are now claimed.

In view of the fact that plaintiff ultimately refused all further deliveries, these "do not ship" orders do not seem of vital importance, but they were much discussed in the argument and we make this reference to them. It is generally true that, where shipments are to be made from time to time, a request on the part of the buyer not to ship certain goods until further notice justifies the seller in suspending delivery of such goods while the request remains in force. Robson v. Bohn, 27 Minn. 333, 7 N. W. 357. Defendant explains these "do not ship" requests in this case as follows: "If they were for a considerable period unable to ship a given item, we would probably have so many cancelations from our customers * * * that we wouldn't need so many as we would have needed, if we had had them promptly." "A number of times we had to make similar requests to plaintiff, so that they wouldn't send us goods of which we were getting too many, in view of the fact that we didn't have other items of which they were not shipping enough." "Another reason is that we hoped by stopping the flow of tools of which we were not in immediate need to divert plaintiff's energies to sending us tools that we did need." From all the evidence the court could well find that, notwithstanding these "do not ship" requests, defendant held itself in readiness to receive all goods ordered if shipped in accordance with the contracts between the parties. For example, although on June 3 a "do not ship" order had been given as to certain goods, on June 12 defendant wrote plaintiff: "We don't know any reason now why you should not feel under obligation to supply us, as promptly as possible, with the goods for which you have accepted our orders."

4. Plaintiff claims that it was relieved of the obligation to make the deliveries which it failed to make because defendant had failed to pay for the merchandise that plaintiff had delivered, in accordance with the contract of sale. The contract provided that defendant should pay for all goods shipped within 30 days from the date of invoice. The orders

for the goods involved were given and accepted between March 7 and October 13, 1916. During the early months payments were made in a manner satisfactory to plaintiffs. On the last day of September, $126.67 fell due, and on October 13, $286.73 more. On this latter date plaintiff commenced making insistent demands for payment. On November 10 it informed defendant it would ship no more, unless payment was made for indebtedness past due. Defendant refused to pay.

The attitude of both parties is expressed in the following correspondence. On November 7 defendant wrote: "We absolutely refuse to make payment on your past due invoices until you have made us shipments that will cut down the goods that we have coming from you." "In proportion to what your shipment of goods to us from this on cut down the unfilled orders, we would cut down your past due invoices to us by making remittance to you to apply on them." "We are willing to allow you to ship us goods from now on, draft with bill of lading." In reply to this plaintiff wrote on November 10: "We are not going to ship you any goods on sight draft and bill of lading attached, or any other way until you have taken care of the accounts that are now past due."

There is much conflict in authority as to the effect, in case of contracts calling for instalment deliveries and instalment payments, of failure of the vendee to pay an instalment when due. We need discuss the law only as it pertains to the state of facts presented in this case. This court said in one case that the vendee's failure "without excuse" to make an instalment payment when due relieves the vendor from making further instalment deliveries. Robson v. Bohn, 27 Minn. 333, 346, 7 N. W. 357. See Palmer v. Breen, 34 Minn. 39, 24 N. W. 322. Beatty v. Howe Lumber Co. 77 Minn. 272, 79 N. W. 1013. See also Uniform Sales Act, § 45, Laws 1917, p. 767, c. 465.

Such language would seem to mean that though an instalment is due, failure to pay may be based on so just an excuse that it will not relieve the vendor from further deliveries, and this we conceive to be the law. But what is a just excuse for refusal to pay an instalment that has become due?

In Union Pressed Brick Co. v. Fultonham Brick & Drain Tile Co. 112 Fed. 920, 50 C. C. A. 615, the court pointed out one excuse which was considered sufficient when it said that failure to make an instalment

payment absolved the plaintiff from obligation to make further deliveries, "unless such failure was justified by plaintiff's previous failure to fill orders as required by the contract."

In Freeth v. Burr, L. R. 9 C. P. 208, the buyer's refusal to pay for the first instalment, claiming a right to withhold to cover loss due to delay in delivery, was held not to be such a refusal on his part to comply with the contract as to set the seller free.

In Myer v. Wheeler, 65 Iowa, 390, 21 N. W. 692, plaintiffs sold defendant ten carloads of barley. Defendants were to pay 70 cents per bushel for each carload when delivered. On receipt of the first carload, the defendants refused to pay, upon the ground that the barley was not equal to the samples, but stated that they had given the plaintiffs credit for 65 cents per bushel, and would withhold payment until the 10 cars were delivered, and urged shipment of the remainder. It was held that plaintiffs were liable for damages resulting from nondelivery of the remainder.

In Winchester v. Newton, 2 Allen, 492, a seller agreed to deliver timber within a certain time. The price was to be paid six months after delivery. Later the time for delivery of a part was extended. The buyer refused to pay for the part first delivered, contending that he was not liable to so pay until six months after the delivery of all. The court said the buyer was wrong in his contention, but there was no prospective refusal to pay for goods to be later shipped. The refusal to pay was based on what the buyer conceived to be the legal effect of the contract, and did not discharge the seller from his promise to deliver the later instalment.

In this case as the court found in substance defendant did not owe the full amount claimed. It had been subjected to substantial damages from plaintiff's default. Unless further deliveries were made, the damage would virtually wipe out plaintiff's claim. Defendant offered to pay cash on delivery for all goods to be subsequently shipped and so far as appears it was solvent and able to do so. But plaintiff insisted on payment of the face of its account in full. Defendant was willing to do even this, waiving all damages for past default, if at that late day its orders could be filled. But it could get no satisfactory assurance as to future deliveries. It was not willing to pay plaintiff's demand in full

with the prospect of being compelled to assert its claim for damages far from home. Our opinion is that defendant was justified in its position, and that plaintiff's refusal to make further delivery was a breach of contract and rendered plaintiff liable in damages.

5. Plaintiff contends that defendant could not "lay up claims for damages against the plaintiffs for not delivering goods more rapidly without giving notice" of its intention to make such claim. Defendant's receipt of such of the goods as it could get did not operate as a waiver of damages for failure to deliver the balance. It was not obliged to threaten to claim damages for nondelivery as a condition to its right to assert such claim. This court held in Minneapolis Threshing Machine Co. v. Hutchins, 65 Minn. 89, 67 N. W. 807, contrary to the weight of authority (see Williston, Sales, § 487; Redlands Orange Growers' Assn. v. Gorman, 161 Mo. 203, 61 S. W. 820, 54 L.R.A. 718; Johnson v. Glass Co. 74 Kan. 762, 88 Pac. 52, 7 L.R.A.[N.S.] 114, 11 Ann. Cas. 505) that acceptance of a delayed shipment of goods waived damages for delay in the delivery of that shipment, but it has never held that the acceptance of one instalment is a waiver of damages for failure to deliver the balance, and such is not the law. Bradley v. King, 44 Ill. 339. The general rule is that "where one party to a contract breaks the same, the other party may stop and refuse further performance. But instead of doing so he may perform so far as he is permitted and then claim the damages he has suffered from the breach." McMaster v. State, 108 N. Y. 542, 553, 15 N. E. 417, 421.

6. Plaintiff claims that the damages are excessive. The court did not indicate the basis of his computation of damages. We have examined the record with much care and we think there is evidence to sustain the court's finding as to the amount of damages.

7. As to the second counterclaim: Since plaintiff was the manufacturer of the articles sold there was an implied warranty that they were free from latent defects in the process of manufacture. Nixa Canning Co. v. Lehmann Higginson Grocer Co. 70 Kan. 664, 79 Pac. 141, 70 L.R.A. 653. The evidence shows a breach of this warranty. Plaintiff contends that it was the agreement between the parties that in case articles delivered should prove defective they should be returned and that plaintiff would then be liable only to replace them. The court declined

to so find and the evidence is not such as to require him to do so.

8. Question is raised as to the qualifications of one of defendant's witnesses to testify as to values of these products at Jamestown, New York. The witness showed such familiarity with prices in that locality as to qualify him to testify.

Order affirmed.