# INLAND PRODUCTS CORPORATION v. DONOVAN INCORPORATED.
## BOYER & GILFILLAN MOTOR COMPANY AND OTHERS, THIRD-PARTY DEFENDANTS.[1]

December 4, 1953.

Nos. 35,764, 35,889.

---

[1]Reported in 62 N. W. (2d) 211.

*Joseph Maun, Mandt Torrison, Jerome B. Simon,* and *Bundlie, Kelley, Finley & Maun,* for appellant-respondent Donovan Incorporated.

*Doherty, Rumble, Butler & Mitchell* and *Haugland & Abdo,* for respondent-appellant Inland Products Corporation and respondents-third-party defendants.

DELL, CHIEF JUSTICE.

Plaintiff, a distributor of farm machinery, brought this action against the defendant, a metal fabricating concern, claiming damages for certain alleged breaches in two contracts under which the defendant was to manufacture farm implements to be sold by the plaintiff. The alleged breaches consisted of the unauthorized substitutions of critical materials and nonconformance to contract specifications which resulted in inferior and defective machines. Plaintiff sought damages for the delivery of a number of defective machines, for the noncompletion of the balance of the contracts, and for injuries to its business reputation and good will. Defendant answered by denying any breaches on its part or any unauthorized substitutions of materials. In addition, defendant counterclaimed for the contract price of certain completed implements, both de-

livered and undelivered, and for damages resulting from plaintiff's failure to complete the contracts.

The case was submitted to the court without a jury, and after finding certain issues in favor of each party, the court awarded $8,396.56 to the plaintiff. There were extensive motions for amended findings and conclusions by both parties. The court made two amendments but otherwise denied the motions. Both parties appeal from the judgment entered pursuant to the amended findings and conclusions.

### FIELD CULTIVATOR CONTRACT

The first of the contracts involved the production of field cultivators which were to conform to a sample exhibited to the plaintiff by the defendant. The trial court found that, while the first cultivators manufactured and delivered by the defendant substantially complied with the contract, later cultivators contained material defects caused by unauthorized substitutions of critical parts. The court also found that on discovery of these substitutions, the parties conferred and "agreed" that the defendant would furnish certain corrective devices for those machines already delivered and incorporate such corrections in future cultivators. The evidence conclusively shows, however, that such measures did not restore the machines to the original contract requirements but rather were remedial devices intended to strengthen the substituted parts. The trial court found that, as to those machines delivered by the defendant, the plaintiff "accepted delivery of such [modified] cultivators as and in performance of the contract." The court thus did not allow the plaintiff any damages on the cultivators delivered but rather allowed the defendant the contract price of those delivered machines not yet paid for. The court further found, however, that the corrective devices were only partially effective, that at a later conference the parties agreed that no more cultivators would be "made" except in conformance with the original contract sample, and that thereafter no cultivators were "delivered" to the plaintiff.

■ Plaintiff's only assignment of error relative to the cultivator contract amounts to a contention that the evidence does not support

the finding that plaintiff "agreed to accept" the modified cultivators as and in performance of the contract. Plaintiff's terminology is incorrect. While the court found that the parties *agreed* that the defendant would furnish certain corrective devices and further found that the plaintiff *accepted* delivery of such modified cultivators as and in performance of the contract, there is no finding that it *agreed* to accept such modified cultivators as performance.[2] A finding that defective or modified goods are *accepted in performance* has entirely different implications than an *agreement to accept* such goods as performance. There is no indication in the findings here of any agreement or obligation running to future deliveries of such goods. By finding that the plaintiff accepted the modified goods "as and in performance of the contract," what the court obviously meant was that such deliveries constituted complete performance of the contract up to that time, *i. e.*, that the plaintiff waived his right to any remedies available to him as a result of such defective deliveries.[3] Does the evidence support this finding?

Certainly the mere acceptance or retention of defective goods does not amount to a waiver of the buyer's right to damages for such defects. M. S. A. 512.49. Nor does his indulgence and co-operation in the seller's attempts to remedy breaches, of itself, constitute an acceptance of the modified or defective goods. See, Bekkevold v. Potts, 173 Minn. 87, 216 N. W. 790, 59 A. L. R. 1164. However, there is nothing to prevent the buyer from accepting modified goods as full performance if he so chooses, and whether or not there is such a   waiver depends on the circumstances and facts of the

[2]Plaintiff recognizes this important distinction in language later in its brief in answering defendant's claim for the price of certain alleged completed but undelivered cultivators.

[3]Both parties assume such an interpretation in their arguments. The court's language "accepted * * * as and in performance of the contract," in reference to the cultivator contract, is to be distinguished from the language "accepted," which is used in connection with the disc harrow contract. The difference in language is consistent with the difference in remedies allowed in each contract. In the cultivator contract no damages were allowed on the delivered items while damages were allowed for the delivered disc harrows.

immediate case. William C. Atwater & Co. Inc. v. Panama R. Co. 255 N. Y. 496, 175 N. E. 189; 3 Williston, Contracts (Rev. ed.) § 706; 3 Williston, Sales (Rev. ed.) §§ 484a, 488; see language in Bekkevold v. Potts, 173 Minn. 87, 216 N. W. 790; see, 46 Am. Jur., Sales, § 723.

In the case at bar there is abundant evidence that the substitution of parts was made necessary by the unavailability of the materials called for by the contract and that the parties cooperated in the suggestions for remedial measures. There was testimony by plaintiff's former general manager that the corrective devices were suggested by plaintiff's agents and that it was said that such remedial measures "would be satisfactory." It was proved that the plaintiff accepted deliveries knowing of the modifications. In a separate, undisputed finding, well supported by evidence, the court found that the plaintiff continued to sell such modified cultivators to its customers knowing that due to the substitutions it was highly speculative that they would operate at all. A consideration of the evidence in its entirety readily leaves the implication that, rather than abandon the cultivator market entirely, plaintiff accepted such goods as trial substitutes for the original contract items in the hope that the modified product would satisfy the extraordinary consumer demands existing at that time. Although the plaintiff was not obligated to accept such modified items as performance of the original contract, it may well have been to its advantage to do so. The evidence might well justify different conclusions as to plaintiff's intention in accepting these modified cultivators. The trial court, however, found that such acceptance was "as and in performance of the contract," and we cannot say that the evidence does not permit such a finding.

■ The defendant's only claim of error relative to the cultivator contract is that the court erred in failing to allow defendant the contract price of certain undelivered cultivators, which it alleges were manufactured and appropriated to the contract at the time

of the final conference, and also the stipulated value of parts acquired by the defendant to complete the cultivator contract.[4]

The unauthorized substitutions of materials found by the court, might well amount to a breach of contract which would justify the plaintiff in refusing to continue with the contract regardless of the condition of any completed but undelivered goods. See, M. S. A. 512.45(2); 2 Williston, Sales (Rev. ed.) §§ 467, 467a; 3 *Id.* § 608b. However, the court found that the plaintiff accepted the defective goods as complete performance of the defendant's contract obligation to date and, as discussed previously, such a finding has evidentiary support. Thus, as we stated earlier, the plaintiff waived his right to any remedies available to him as a result of the defective deliveries and the original contract obligations stand unimpaired.[5] Under the contract, it was defendant's duty to manufacture and offer to deliver goods of a certain description and quality, and it was plaintiff's obligation to accept and pay for such goods. See, M. S. A. 512.41.

However, plaintiff was under no obligation to pay for or accept any further modified or defective goods, not conforming to the original contract. See, 1 Williston, Sales (Rev. ed.) § 225a. As previously stated, there is no finding that the plaintiff *agreed to continue accepting* defective cultivators as performance of the contract, that is, that there was a modification of the contract. Nor does the fact that plaintiff accepted some defective cultivators in any way obligate it to continue to accept similarly defective goods. Shotwell-

---

[4]It is important to note that there there is no finding that the plaintiff "refused" to accept any more cultivators, as there is in relation to the disc harrows. Nor is there any claim on this appeal that the court erred in not allowing the plaintiff damages on the uncompleted balance of the cultivator contract.

[5]Even in the absence of this finding of acceptance as performance, the mere fact that plaintiff accepted the goods with knowledge of their defective condition, while possibly not waiving his right to damages, might well prevent him from asserting such past defective performance as grounds for not continuing with the contract. See, 2 Williston, Sales (Rev. ed.) §§ 467, 467d; 3 Williston, Contracts (Rev. ed.) §§ 687, 688; Annotation, 29 A. L. R. 1517.

Johnson Co. v. C. O. D. Tractor Co. 154 Minn. 417, 191 N. W. 813; 2 Williston, Sales (Rev. ed.) § 467d; 3 *Id.* § 493b. And, contrary to defendant's contention, plaintiff's pleadings and position on the trial permitted it to defend its nonpayment on the basis of the defective condition of the undelivered cultivators.

Unfortunately, the court made no finding relative to the existence or quality of these undelivered cultivators,[6] and the evidence is not so conclusive on the matter that this court could make any factual conclusion. See, 1 Dunnell, Dig. (3 ed.) § 434.

On consideration of the findings and the evidence herein, it is our opinion that if, in fact, the undelivered cultivators were manufactured in accordance with the contract requirements and were appropriated to the contract, the plaintiff would be liable for the contract price of such items. What the factual situation was is a question for the trial court. We, therefore, remand the case to the trial court for the vacation of the judgment and for additional findings relating to the existence and condition of the undelivered cultivators and, if the trial court deems it advisable, to take further evidence upon these issues. See, Nash v. Kirschoff, 161 Minn. 409, 201 N. W. 617; Halvorson v. Halvorson, 133 Minn. 78, 157 N. W. 1001; State ex rel. South St. Paul v. Hetherington, 240 Minn. 298, 61 N. W. (2d) 737; 1 Dunnell, Dig. (3 ed.) §§ 435, 438b.

Defendant suggests that the finding indicating that there was no "delivery" of any further cultivators after the final conference is, in reality, a finding that there was no *tender* of the undelivered cultivators. We cannot agree with such an interpretation. *Delivery* and *tender of delivery* are distinct terms. Moreover, it is doubtful whether the evidence would justify a finding that there was no

---

[6]Defendant's motion for amended findings included a motion for an additional finding that plaintiff owed defendant the contract price of 33 completed but undelivered cultivators. While the denial of this motion may be equivalent to the court finding that such cultivators did not exist (see, Buro v. Morse, 183 Minn. 518, 237 N. W. 186), under the evidence we are not prepared to reject defendant's claim on this basis. Unfortunately the motion did not make reference to the condition or quality of such undelivered cultivators so that the denial has no effect on this issue.

tender of delivery. If actual *delivery* to the plaintiff or to a particular place was a term of the contract, it may well be that plaintiff would not be liable for the price until such delivery was completed. See, M. S. A. 512.19, Rule 5; Western Hat & Mfg. Co. v. Berkner Bros. Inc. 172 Minn. 4, 214 N. W. 475; Reese v. Evans, 187 Minn. 568, 246 N. W. 250. However, the findings, in their present state, do not indicate such a condition as a part of the contract herein. If such a finding was intended, it should be clearly stated.

Plaintiff's liability for the parts acquired by defendant to fulfill the cultivator contract depends upon whether or not plaintiff could rightfully refuse the undelivered, completed goods. If plaintiff *wrongfully* refused to accept and pay for such goods, it would appear that it is also liable for the value of the parts acquired by the defendant to fulfill the contract. M. S. A. 512.64. If, however, the remainder of the cultivators were defective, plaintiff did not commit any breach of contract and thus would not be liable for the value of the parts. Plaintiff's sole obligation was to accept and pay for completed cultivators; until the parts were manufactured into such items or plaintiff wrongfully neglected or refused to pay for goods corresponding to the contract requirements, there was no liability on its part.

## Disc Harrow Contract

■ The second contract called for the manufacture by the defendant of disc harrows which were to conform to certain specifications furnished by the plaintiff. The court found that, after delivery of a number of the harrows, numerous defects appeared which were due partly to improper specifications and partly to the failure of the defendant to follow the specifications. Certain modifications were made in the specifications and production was resumed. However, the trial court found that the defendant failed to manufacture the harrows in accordance with the modified plans and specifications in several respects and furthermore that the defendant did not use the care and skill required by the standard practices in this vicinity in assembling the parts; that, while all the harrows were

not defective, certain defects appeared in a number of the machines; and that, while complaints were received concerning approximately half of the delivered harrows, the evidence did not disclose actually how many were originally defective or how many of these were not reworked so as to make them satisfactory. It was also found that, as a result of unworkmanlike construction, the defects in the machines became common knowledge in the trade area and it became practically impossible to sell any more of them and that plaintiff was, therefore, justified in refusing to accept delivery of any more of the machines. It was further found that, while the plaintiff owed a balance of $17,212.96 on harrows delivered, due to the defects all the delivered harrows were worth $5,800 less than the contract price and that, if the balance of disc harrows had been properly constructed, the plaintiff would have realized a profit of $24,079.52, and the court allowed this amount as an item of damages. Finally, the court found that, because of certain business practices, plaintiff had no established business or good will and thus suffered no pecuniary loss in that respect.

Defendant's first assignment of error relating to the disc harrow contract is that the court erred in allowing the several remedies it did, it being defendant's claim that the remedy specifically provided for in the contract, viz., replacement or repair, was an exclusive remedy.

The question whether or not a remedy specifically set forth in a contract is intended to be an exclusive remedy is to be determined from a careful analysis of the contract in its entirety. This court has recognized that in some contracts calling for notice within a given trial period, or inspection on receipt, a specified remedy may be construed to be the sole remedy. Rowell v. Oleson, 32 Minn. 288, 20 N. W. 227; Beckett v. Gridley, 67 Minn. 37, 69 N. W. 622; Helvetia Copper Co. v. Hart-Parr Co. 142 Minn. 74, 171 N. W. 272, 767 (provision for "no further claim"); DeWitt v. Itasca-Mantrap Coop. Elec. Assn. 215 Minn. 551, 10 N. W. (2d) 715. However, in the absence of circumstances readily showing that the remedy was intended to be exclusive, we have repeatedly held that a specified

remedy should be considered as permissive rather than exclusive and thus not a bar to other remedies provided by law. Tunell v. D. M. Osborne & Co. 31 Minn. 343, 17 N. W. 944; D. M. Osborne & Co. v. Marks, 33 Minn. 56, 22 N. W. 1; Mandel v. Buttles, 21 Minn. 391; Fitzpatrick v. D. M. Osborne & Co. 50 Minn. 261, 52 N. W. 861; Gaar, Scott & Co. v. Patterson, 65 Minn. 449, 68 N. W. 69; Hjorth v. Albert Lea Machinery Co. 142 Minn. 387, 172 N. W. 488; Maxwell v. Lee, 34 Minn. 511, 27 N. W. 196; Detwiler v. Downes, 119 Minn. 44, 137 N. W. 422, 50 L.R.A.(N.S.) 753; Berry Asphalt Co. v. Apex Oil Products Co. 215 Minn. 198, 9 N. W. (2d) 437 (court relied heavily on fact that contract had been drawn by a layman). See, also, Vold, Sales, § 158, p. 499; 3 Williston, Sales (Rev. ed.) § 611a. Considering the contract before us here in its entirety, we concur in the trial court's obvious conclusion that the stated remedy of replacement or repair was not intended to be an exclusive remedy so as to preclude the buyer from resorting to other remedies afforded him under the law.

■ Defendant next contends that plaintiff's *refusal to accept* any more of the disc harrows was not timely as a matter of law.[7] As we later point out, the findings do not clearly indicate the basis for the plaintiff's refusal to accept any more of the goods. If the refusal was justified on the basis of the defective condition of such goods, it would seem that such refusal would be "timely" any time before acceptance. However, even if the remedy were rescission, we feel that the evidence supports the conclusion that the plaintiff acted timely. A review of the findings, memorandum, and evidence indicates that once the defects became known to the plaintiff it promptly notified the defendant. There is abundant evidence that any delay between that time and the time that this action was instituted was due to the indulgence and cooperation by the plaintiff in the defendant's attempts to remedy its defaults. This period should not be charged to the buyer as delay in notifying the seller

---

[7]Defendant repeatedly refers to the remedy allowed as "rescission" in spite of the fact that the court specifically changed such language to "refusing to accept delivery."

of the defects. Federal Motor Truck Sales Corp. v. Shanus, 190 Minn. 5, 250 N. W. 713; see, Laganas Shoe Mfg. Co. v. Sharood, 173 Minn. 535, 217 N. W. 941; J. G. Cherry Co. v. Larson, 124 Minn. 251, 144 N. W. 949; J. L. Owens Co. v. O'Keeffe, 141 Minn. 275, 170 N. W. 204, 174 N. W. 224. The facts here support the conclusion that the lapse of time from the discovery of the defects until this action was instituted was due either to attempts to rectify the defects or to efforts in determining whether or not these attempts were successful. Plaintiff's refusal to accept any more of the goods was not untimely as a matter of law. Under the evidence the question was one for the trier of fact.

■ Defendant next assigns error in what it terms the court's allowing plaintiff "multiple remedies" in the disc harrow contract. Defendant insists that the court erred in allowing the plaintiff to accept and retain the delivered harrows and to sue for damages for the breaches of warranty therein and in further allowing plaintiff to refuse to accept any more of the goods and to recover damages on the uncompleted balance of the contract.

The disc harrow contract clearly qualifies as a "divisible" or "severable" contract and thus plaintiff may invoke separate remedies as to each part, that is, as to the delivered and undelivered portions. E. Edelman & Co. v. Queen Stove Works, Inc. 205 Minn. 7, 284 N. W. 838; Fiterman v. J. N. Johnson & Co. 156 Minn. 201, 194 N. W. 399; see, Klemmer v. Bierdorf, 155 Minn. 365, 193 N. W. 592; 2 Williston, Sales (Rev. ed.) § 466, *et seq.*

As to those goods delivered, plaintiff clearly may retain the goods and recover damages for the defects and breaches of warranty therein. M. S. A. 512.69(1), (a) and (b); Agoos Kid Co. Inc. v. Blumenthal Import Corp. 282 Mass. 1, 184 N. E. 279; Baxter v. Savoy Shirt Co. 238 N. Y. 106, 143 N. E. 807. As to the undelivered portion, since the contract also would qualify as an "installment" contract within the meaning of M. S. A. 512.45(2)[8] and the breach

---

[8]See, Fishback v. G. W. Van Dusen & Co. 33 Minn. 111, 22 N. W. 244; Hjorth v. Albert Lea Machinery Co. 142 Minn. 387, 172 N. W. 488; see, also, Rose v. Baxter, 67 Ohio App. 1, 34 N. E. (2d) 1011; 2 Williston, Sales (Rev. ed.) § 465a.

in the delivered portion would satisfy the requirement of a "material," non-severable breach,[9] the plaintiff could *rescind* the balance of the contract. E. Edelman & Co. v. Queen Stove Works, Inc. 205 Minn. 7, 284 N. W. 838; Fiterman v. J. N. Johnson & Co. 156 Minn. 201, 194 N. W. 399; Paulson, Linkroun & Co. v. Bidwell (3 Cir.) 278 F. 381; Dexter Yarn Co. v. American Fabrics Co. 102 Conn. 529, 129 A. 527; 2 Williston, Sales (Rev. ed.) §§ 467, 467d. Of course, if the remedy allowed herein were actually rescission, plaintiff could not recover damages on the undelivered portion of the contract for rescission and an award of damages on the same part of the contract would be inconsistent. 3 Williston, Sales (Rev. ed.) § 612.

However, it is obvious that the court here attempted to grant the plaintiff a remedy other than rescission. The court specifically amended its findings to substitute the phrase "refusing to accept" for the word "rescinding." M. S. A. 512.69(1)(c) provides that, where the property in defective goods has not passed a buyer may refuse to accept the goods and maintain an action against the seller for damages. Under a contract to manufacture goods according to specifications, where the completed goods do not correspond to the contract requirements, there is no transfer of title to such goods. See, M. S. A. 512.19, Rule 4(1); Pope v. Allis, 115 U. S. 363, 6 S. Ct. 69, 29 L. ed. 393; Gardner v. Lane, 91 Mass. (9 Allen) 492, 85 Am. D. 779; *Id.* 94 Mass. (12 Allen) 39; *Id.* 98 Mass. 517; 1 Williston, Sales (Rev. ed.) § 250; see, also, Aultman, Miller & Co. v. Clifford, 55 Minn. 159, 56 N. W. 593. Thus, if the undelivered harrows were defective, similar to the delivered machines, no property in such goods was transferred to the plaintiff even if they were appropriated to the contract, and plaintiff could rightfully refuse to accept such defective goods. See, 1 Williston, Sales (Rev. ed.) § 225a. And if the defendant never tendered or appropriated any goods conforming to the contract specifications, the plaintiff could

---

[9]The court found that it became practically impossible to sell any more of the machines because they had acquired a reputation for being defective due to defendant's breaches of contract. See, Agoos Kid Co. Inc. v. Blumenthal Import Co. 282 Mass. 1, 184 N. E. 279.

successfully maintain an action for damages resulting from the defendant's failure to complete the contract. If, however, the undelivered goods did correspond to the contract specifications and the property in the goods passed to the plaintiff, its only remedy would be rescission based on the breaches of contract found to have been committed by defendant in relation to the delivered portion of the contract, and it could, therefore, not recover damages on the uncompleted part of the contract. Again, the findings do not resolve the question of the existence or condition of any undelivered harrows. We, therefore, also remand this portion of the case for additional findings and, if the trial court deems it advisable, to take further evidence upon these issues.

■ Defendant's final assignment of error is that there is no evidence to support the award of damages for lost profits on the uncompleted remainder of the disc harrow contract.[10] Defendant bases its claim principally on what it calls the "undisputed" evidence that plaintiff's entire operation was conducted at a loss for the last two years during which the contract was in force. Accepting this as a fact, nevertheless, there is evidence that such losses were due in a large measure to the defendant's breaches of warranties under the contracts involved in this case. Moreover, defendant's argument appears to be based on figures which indicate that plaintiff's *entire* business was being operated at a loss. While it may be true that even if this contract had been fulfilled plaintiff's entire enterprise would still have shown a net loss, nevertheless, plaintiff is entitled to the benefit in the reduction of any such loss as would have resulted from the realization of profits on this contract. Defendant also contends that the court erred in allowing, as damages, the total difference between the contract price and the resale value less the salesmen's commissions. The defendant suggests that such amount should be further reduced by certain overhead items and freight expenses. There was evidence that the overhead on such items was already incurred and would not be re-

[10] Of course, this question is material only insofar as plaintiff is entitled to any damages on the uncompleted part of the contract.

duced by the nonperformance of the remainder of the contract and, therefore, the court could disregard such items. See, Appliances, Inc. v. Queen Stove Works, Inc. 228 Minn. 55, 36 N. W. (2d) 121. However, the matter of freight charges would seem to be necessarily deductible if such expenses were borne by the plaintiff. If, however, the expenses were borne by the ultimate consumer or dealer they would, of course, not be deductible. Since we are remanding the case, the trial court might well consider the matter further and make such additional findings as necessary to clarify this point.

■ Plaintiff's only assignment of error concerning the disc harrow contract is that the amount of damages allowed the plaintiff for the breaches of warranty involving the delivered harrows was inadequate. From a review of the evidence and the findings and after due consideration of the comprehensive memorandum of the trial court, we cannot say that the damages allowed were inadequate. The court pointed out the difficulty encountered in determining the exact number and extent of the breaches in such items. See, 5 Dunnell, Dig. (3 ed.) § 2594. Such difficulty was due to the very nature of the contract since it contemplated immediate delivery and resale of the goods to third parties and was not due necessarily to any failure of proof by either party. The court estimated the amount of damages incurred by plaintiff, and from a review of the evidence as a whole, we cannot say the court erred in the amount allowed.

Remanded with directions.

ON APPEAL FROM CLERK'S TAXATION OF COSTS.

On January 29, 1954, the following opinion was filed:

PER CURIAM.

Plaintiff appeals from the clerk's taxation of costs.

After finding issues in favor of both parties the court awarded $8,396.56 to the plaintiff. Judgment was entered and both parties appealed. Defendant was successful to the extent that the case was remanded for the vacation of the judgment and for additional findings and, if the trial court deemed it advisable, to take further

evidence on certain issues pointed out in the opinion. The proceedings in the lower court may result in a different award. In this situation defendant was the prevailing party although the relief obtained was not in the form which it sought or expected. State ex rel. South St. Paul v. Hetherington, 240 Minn. 298, 61 N. W. (2d) 737; Propper v. C. R. I. & P. R. Co. 237 Minn. 386, 54 N. W. (2d) 840; Krusemark v. Krusemark, 232 Minn. 416, 46 N. W. (2d) 647; Henderson v. Northwest Airlines, Inc. 231 Minn. 503, 43 N. W. (2d) 786; Allen v. Jones, 8 Minn. 172 (202).

M. S. A. 607.01 provides that in all cases the prevailing party shall be allowed his disbursements necessarily paid or incurred. This statute gives this court no discretion. If a party prevails, he cannot be denied the disbursements which he necessarily paid or incurred. State ex rel. South St. Paul v. Hetherington, *supra;* Krusemark v. Krusemark, *supra;* Collins v. Collins, 221 Minn. 343, 22 N. W. (2d) 168, 23 N. W. (2d) 9.

Plaintiff contends that the taxation of costs is premature. The basis of this contention is that there is no judgment in this court upon which costs may properly be taxed. This contention is without merit. State ex rel. South St. Paul v. Hetherington, *supra.*

Plaintiff also claims that the disbursements were not necessary and that the amount taxed is excessive. Nowhere does it point out the items of disbursements claimed by it to be unnecessary or excessive. In that situation, the contention must be rejected. Henderson v. Northwest Airlines, Inc., *supra.*

A modification of a judgment entitles the party obtaining the modification to his costs and disbursements even though the disbursements were made in providing a record and brief on issues upon which the party obtaining the modification did not prevail. Propper v. C. R. I. & P. R. Co. *supra.* See, also, Chicago & N. W. Ry. Co. v. Verschingel, 197 Minn. 580, 268 N. W. 2, 709. This also applies where a case is remanded in the manner which it is here.

Affirmed.

MR. JUSTICE NELSON, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.